**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **MARGARITA "MAGGIE" ROBERTS** | § | |
| *Plaintiff* | § | |
| | § | |
| **VS.** | § | |
| | § | **CIVIL ACTION NO. 2:23-cv-174** |
| | § | |
| **CITY OF CORPUS CHRISTI, TEXAS,** | § | |
| **VINCE GUTIERREZ AND MICHEAL** | § | |
| **PEREZ** | § | |
| *Defendants* | § | |
| | § | **JURY TRIAL DEMANDED** |
| | § | |
| | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES **MARGARITA ROBERTS**, referred to herein as Plaintiff, complaining of Defendants **CITY OF CORPUS CHRISTI, TEXAS** ("City"), **VINCE GUTIERREZ** ("Officer Gutierrez"), and **MICHEAL PEREZ** ("Officer Perez"), in their individual capacities, hereinafter called Defendants, and for cause of action, would respectfully show unto the Court and jury the following:

## I.   NATURE OF THE CASE

**THE CLAIM:** CITY OF CORPUS CHRISTI Officers Vince Gutierrez and Micheal Perez used excessive force against Margarita "Maggie" Roberts in violation of her individual rights under the Fourth Amendment to the United States Constitution when they violently detained Ms. Roberts and brutally through her into the back of a police cruiser. Defendants were responding to a call from Ms. Roberts seeking assistance because her brother, R.S., was experiencing suicidal ideations with prior attempts. This violence was caused by a CITY OF CORPUS CHRISTI policy wherein the City, despite having dedicated crisis intervention team (CIT) officers, does not dispatch those officers to every call involving a reported mental health issue, leaving officers without

1

specialized training to respond to situations requiring a specialized skill set. Following Ms. Roberts attempts to intervene during her brother's body slamming to the ground, Officer Gutierrez pulled Ms. Roberts down to the ground and ultimately threw her into the back of a police cruiser, causing Ms. Roberts to be injured. Ms. Roberts' injuries resulted directed and only from this clearly excessive use of force; and the excessiveness of that force was clearly unreasonable. The actions alleged herein are of such a nature as to shock the conscience and are cruel and unusual in their oppressiveness.

## II.  PARTIES

1. Plaintiff, **MARGARITA ROBERTS** is a resident of CITY OF CORPUS CHRISTI, TEXAS.

2. Defendant **CITY OF CORPUS CHRISTI** is a political subdivision of the State of Texas and the CITY OF CORPUS CHRISTI POLICE DEPARTMENT is an agency operated thereunder.

3. The CITY OF CORPUS CHRISTI POLICE DEPARTMENT is funded and operated by the CITY OF CORPUS CHRISTI City Council. Mayor Paulette Guajardo is the chief elected officer of the CITY OF CORPUS CHRISTI. City Manager Peter Zanoni is the chief executive officer of the CITY OF CORPUS CHRISTI.

4. Mayor Guajardo and City Manager Zanoni are responsible for implementing the policies and decisions of the CITY OF CORPUS CHRISTI City Council as the City's primary administrators.

5. Mayor Guajardo, City Manager Zanoni, and the City of Corpus Christi City Council are tasked with appropriating, reviewing, and implementing the CITY OF CORPUS CHRISTI POLICE DEPARTMENT'S budget, policies, procedures, practices, and customs, including the acts and omissions related thereto, at issue in this lawsuit.

6. Mike Markle is the Chief of Police of the CITY OF CORPUS CHRISTI POLICE DEPARTMENT and the primary policymaker tasked with creating, implementing, and reviewing the department's policies, procedures, practices, and customs.

7. CITY OF CORPUS CHRISTI may be served by and through Mayor Paulette Guajardo, 1201 Leopard St., Corpus Christi, Texas 78401.

8. Defendant **VINCE GUTIERREZ** is a police officer employed by the CITY OF CORPUS CHRISTI POLICE DEPARTMENT and at all times material herein was a police officer

acting in the course and scope of his employment for CITY OF CORPUS CHRISTI, TX. He may be served at his place of employment at the CITY OF CORPUS CHRISTI POLICE DEPARTMENT located at 321 John Sartain St., Corpus Christi, TX 78401, or wherever he may be found. Defendant Gutierrez is being sued in his individual capacity.

9. Defendant **MICHEAL PEREZ** is a police officer employed by the CITY OF CORPUS CHRISTI POLICE DEPARTMENT and at all times material herein was a police officer acting in the course and scope of his employment for CITY OF CORPUS CHRISTI, TX. He may be served at his place of employment at the CITY OF CORPUS CHRISTI POLICE DEPARTMENT located at 321 John Sartain St., Corpus Christi, TX 78401, or wherever he may be found. Defendant Perez is being sued in his individual capacity.

### III.    <u>JURISDICTION</u>

10. The subject matter in controversy and damages sought are within the jurisdictional limits of this Court.

11. This Court also has jurisdiction over this suit under 42 U.S.C. § 1983.

12. Venue is also appropriate in the Southern District of Texas pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claim occurred in the City of Corpus Christi, TX, which is in the Corpus Christi Division of the Southern District of Texas.

### IV.    <u>FACTS AND ALLEGATIONS</u>

13. On 19 July 2021 MARGARITA "MAGGIE" ROBERTS had her constitutional rights violated when she was brutally handcuffed, detained, and excessively and recklessly thrown into the back of a City of Corpus Christi Police Department (CCPD) unit.

14. The incident was captured on one of the Defendants' body camera devices.

15. Several hours prior to the incident wherein Mrs. Roberts was deprived of her constitutional rights, her younger brother R.S. sent some text messages saying "I'm done with life.," indicating he was having suicidal ideations.

16. Believing he had experienced such ideations before and concerned for the safety of her little brother, Mrs. Roberts — a long-time health care provider who has been a nurse for

many years — first called Poison Control, concerned that he may have attempted to harm himself by ingesting medication.

17. Poison control instructed Mrs. Roberts to take R.S. to the emergency room immediately.

18. Mrs. Roberts' niece and nephew then proceeded to get R.S. to the emergency room at Spohn Shoreline Hospital.

19. Once at Shoreline, the hospital staff was unable to answer whether R.S. would be alright after ingesting alcohol and, potentially, pills.

20. The nurse at Shoreline then instructed Mrs. Roberts to take R.S. home and to call the Corpus Christi Police Department for a medical or mental health warrant.

21. Mrs. Roberts then called CCPD waited about 30 minutes before returning home, believing mistakenly that the police would escort them back to the hospital

22. Upon arriving on scene, Defendants Gutierrez and Perez, on information and belief, approached a vehicle in which Mrs. Roberts and R.S. were sitting. Mrs. Roberts informed the officers that he had taken approximately ten or eleven muscle relaxers and drinking beer. Mrs. Roberts showed the officers a pill bottle containing the medication R.S. was believed to have taken.



(ILLUSTRATION A)

23. Defendant Gutierrez then begins to ask R.S. to identify himself. R.S. tells Defendant that his name is on the bottle and that he doesn't need to identify himself because he has not committed any crime. Both R.S. and Defendant Gutierrez begin to raise their voices.



(ILLUSTRATION B)

24. Defendant Gutierrez then asks Mrs. Roberts to step out of the car. Her brother, R.S., continues repeating that he will not answer questions. Defendant Gutierrez continues inquiring of R.S. whether he had taken anything in an attempt to hurt himself and whether he was alright. R.S. soundly refused to answer questions.

25. Defendant Gutierrez walks over to Mrs. Roberts to inquire about what happened preceding their arrival. Mrs. Roberts shows him her phone, displaying text messages she had received from R.S.



(ILLUSTRATION C)

26. Mrs. Roberts then tells Defendant Gutierrez that she "just doesn't want him to die," elaborating further that her brother is depressed.

27. Defendant Gutierrez then walks over to R.S. and tells him he is going to pat him down. R.S. refuses to be pat down. Defendant Gutierrez puts his hands on R.S. to affect the pat down.



(ILLUSTRATION D)

28. Defendants Gutierrez and Perez tussle with R.S., attempting to detain him for the purpose of conducting a pat down. After a short struggle, Defendants take R.S. down to the ground, where he is asking why the officers are treating him as they are. R.S. screams out, "Maggie! Really, Maggie?!," presumably trying to understand why the Defendant officers have taken him to the ground and so roughly.

29. Mrs. Roberts, seeking R.S. being handled roughly, comes over to try and make sure her brother is alright while he's on the ground with two officers tussling with him. Mrs. Roberts attempts to touch her brother and is struck in the breast twice, with enough force to push her into a parked car immediately to her left and to cause the car to shake when she collides with it.



(ILLUSTRATION E)

30. Mrs. Roberts, after being struck twice in the breast unnecessarily, yells out "Why did you push me?!," as it was evident she was merely attempting to ensure that her brother had not sustained injury from the takedown. Mrs. Roberts then lazily kicks her leg out toward Defendant Gutierrez. It is unclear from the video whether Mrs. Roberts made any contact with Defendant. Defendant Gutierrez then proceeds to pull Mrs. Roberts down to the ground by her tank top, throwing at least one punch when she is on the ground.



(ILLUSTRATION F)



(ILLUSTRATION G)

31. After Mrs. Roberts is ripped down to the ground by her shirt, Defendant Gutierrez begins yelling at her to "put your hands behind your fucking back." He continues to yell at her while she asks him to allow her to give him her arms. She begins informing the officer that he's hurting her. He does not acknowledge that he has detained her in a way that is causing her pain.

32. R.S. and Mrs. Roberts, understandably upset and shaken up, continuing asking why they are being treated in the manner they are. Mrs. Roberts continues frantically informing Defendant Gutierrez that she is in pain. Defendant Gutierrez says at one point, "I don't care. You just fucking punched me in the face." Mrs. Roberts continues screaming "You're hurting me!" Her husband also pleads with Defendant Gutierrez to get off of his wife.

33. Thereafter, Mrs. Roberts is walked over to the CCPD unit by Defendants Perez and Gutierrez. Once at the car, Defendant Perez puts Mrs. Roberts up against the unit with her hands in the air, contorted in an obviously painful position. Once Defendant Gutierrez opens the door to the vehicle, Defendant Perez then violently throws Mrs. Roberts into the back of the vehicle.



(ILLUSTRATION H)



(ILLUSTRATION I)

34. Mrs. Roberts' handcuffs were put on so tightly that her hands were numb thereafter for approximately three months. She also sustained injuries in other parts of her body, including her breast and her knee.

35. At one point, a female officer arrived on scene and took pictures of Mrs. Roberts, presumably to record her state after the incident.

36. Mrs. Roberts was then transported, erratically, to the CDC wherein she was left inside the police cruiser, on information and belief, for approximately two hours.

37. Mrs. Roberts asked the CDC staff to pull up her shirt, to which they replied, "Fuck you. You hit a cop."

38. Mrs. Roberts — known to friends and family as "Maggie" — was ultimately arrested for Assault on a Public Servant; Failure to Identify (for allegedly saying her name was "Maggie" rather than "Margarita"); Interference with Public Duties; and Resisting Arrest, Search, or Transportation.

39. The Nueces County District Attorney's Office no-charged all four charges in the case, citing "Prosecutorial Discretion" as the reason justifying the no-charge.

# V.

## CAUSES OF ACTION

### COUNT ONE

### EXCESSIVE FORCE

**Violation of the Fourth Amendment Pursuant to 42 U.S.C. § 1983 Against Defendants Gutierrez and Perez**

40. Mrs. Roberts repeats and re-alleges each and every allegation contained in the above paragraphs as though fully delineated below.

41. Defendants Gutierrez and Perez, acting under color of law, deprived Mrs. Roberts of the rights and privileges secured her by the Fourth Amendment to the United States Constitution to be free from illegal and unreasonable seizures by the use of force.

42. Accordingly, Mrs. Roberts commences this action pursuant to 42 U.S.C. § 1983.

43. "In order to present a successful claim of excessive force under § 1983, the plaintiff must show (1) an injury; (2) that resulted directly and only from a use of force that was excessive to the need of force; and (3) that the use of force was unreasonable under the circumstances." *Sullivan v. Allred,* 297 Fed. Appx. 339, 342 (5th Cir. 2008) (citing *Ramirez v. Knoulton,* 542 F.3d 124, 128 (5th Cir. 2008), *Bush v. Strain,* 513 F.3d 492, 501 (5th Cir. 2008), and *Freeman v. Gore,* 483 F.3d 404, 416 (5th Cir. 2007) (citing *Tarver v. City of Edna,* 410 F.3d 745, 751 (5th Cir. 2005)(see also *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016)).

44. Mrs. Roberts was unquestionably injured by her takedown and violent throwing into the back of the police cruiser. As the Fifth Circuit has opined, "the eggshell skull rule is applicable in 42 U.S.C. § 1983 cases," recognizing that "a tortfeasor [ — here, Defendant s Gutierrez and Perez —] takes his victim as he finds him." *Darden v. City of Fort Worth, Texas,* 880 F.3d 722, 731 (5th Cir.), *cert. denied sub nom. City of Fort Worth, Tex. v. Darden,* 139 S. Ct. 69, 202 L.Ed. 2d 23 (2018). (citing *Dunn v. Denk,* 54 F.3d 248, 251 (5th Cir. 1995), *rev'd on other grounds* 79 F.3d 401 (5th Cir. 1996) (en banc); *see also Koch v. United States*, 857 F.3d 267, 274 (5th Cir. 2017).

45. With respect to the injury, significant injury is not required, per se; however, the injury must be "more than de minimis." *Hanks v. Rogers*, 853 F. 3d 738 (5th Cir. 2017), (citing *Tarver v. City of Edna*, 410 F.3d 745, 752 (5th Cir. 2005) (citing *Harper v. Harris County, Tex.*, 21 F.3d 597, 600 (5th Cir. 1994)), but "the injury must be more than *de minimis*," (citing *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir.1999)).

46. Mrs. Roberts' injuries resulted directly and only from a use of force that was excessive to the need of force, to wit: being forcefully taken down to the ground after being struck twice when she was not posing any threat to Defendant Gutierrez; was *visibly and obviously* unarmed; and when she was thrown violently, face first, into the back of the police cruiser without regard for her safety or potential injury.

47. The excessiveness of the force was clearly unreasonable, particularly considering Mrs. Roberts was not only not menacing the officers: she called for assistance for her brother, for whom she had been seeking help that afternoon. She was not taking any aggressive stances, movements, or actions when Defendant Gutierrez decided to unjustifiably put hands on her and forcefully take her to the ground.

48. "The relationship between the need and the amount of force used" must be considered and assessed by the officers using force to "effectuate [a] subject's compliance." *Newman v. Guedry,* 703 F.3d 757, 763 (5th Cir. 2012) (quoting *Deville v. Marcantel,* 567 F.3d 156, 167 (5th Cir. 2009) (see also, *Hanks v. Rogers*, 853 F. 3d 738 (5th Cir. 2017)).

49. An officer tasing, striking, or otherwise violently slamming an arrestee who is not actively resisting arrest is a constitutional violation. *Darden v. City of Fort Worth, Texas,* 880 F.3d 722, at 731 (5th Cir.), *cert. denied sub nom. City of Fort Worth, Tex. v. Darden,* 139 S. Ct. 69, 202 L.Ed. 2d 23 (2018).

50. Fifth Circuit case law establishes that the degree of force an officer can employ is reduced when an arrestee is not actively resisting arrest. *Id.*

51. Mrs. Roberts was not actively, passively, or otherwise resisting arrest when forcefully tackled by Defendant Gutierrez.

52. In determining whether the officer's use of force was "objectively reasonable," courts utilize a three-factor test outlined in the seminal Supreme Court case *Graham v. Connor:*

    a.    *Severity of the crime;*

    b.    *Immediate threat;* and

c.      Whether the subject is *actively resisting* or *attempting to evade arrest by fleeing.* *Graham v. Connor,* 490 U.S. 386, 396 (1989).

53. Analyses surrounding whether a particular use of force was objectively reasonable require "a careful balancing of the nature and quality of the intrusion on the individual's…interests against the countervailing governmental interests at stake…[requiring] careful attention to the facts and circumstances of each particular case." Seth Stoughton, et al., Evaluating Police Uses of Force (2020) (citing *Graham v. Connor*, at 396).

54. "Reasonableness" is judged from the perspective of a *reasonable officer on the scene*, as opposed to with the "20/20 vision of hindsight." *Ibid* (citing *Graham v. Connor*, at 396)(emphasis added).

55. Under *Graham,* courts are charged to rely on what a "reasonable officer" would have perceived, irrespective as to whether the officer *actually* perceived it that way. *Ibid* (citing *Graham v. Connor*, at 396).

56. As to the three elements of the *Graham* objective reasonableness test, **none** of the three factors is satisfied in favor of Defendant.

57. At the point Defendant Gutierrez took down Mrs. Roberts, she was not attacking or assaulting him, and had been struck twice by him while trying to assist her brother. At best, there is an inchoate or attempted contact with Defendant Gutierrez immediately prior to being pulled to the ground. Notwithstanding that attempt, Mrs. Roberts had moved back to the parked vehicle where she was standing when forced to the ground, in which case, any need for the use of force had already abated.

58. This is especially true when Mrs. Roberts was taken and forcibly held against the police cruiser before being violently thrown in face first. At that point, she was completely subdued, with her hands painfully contorted up and behind her back. She was not a flight risk and was not attempting to harm Defendant Perez at all.

59. Consequently, no force **whatsoever** was justified in either application of force by Defendants.

60. The other two factors, however, also weigh heavily against Defendants Gutierrez and Perez.

61. Mrs. Roberts was not an immediate threat, as any alleged threat she posed had already abated when she was taken down. She took no steps towards Defendant and was clearly

unarmed. When held against the police cruiser, she was subdued in a manner where she obviously could not pose any harm to Defendant Perez and was clearly not attempting to cause him any harm.

62.  Mrs. Roberts was also not actively or passively resisting Defendants Gutierrez and Perez or attempting to flee or evade arrest. She was standing by herself up against the car when taken down and completely subdued before being thrown into the police cruiser. She was most certainly not attempting to flee either.

63.  The fact that any alleged crime that had been committed or even suspected had already subsided and that Mrs. Roberts was standing still or was otherwise subdued, makes it clear that Defendants' belief that force was needed and the accompanying use of force were completely unreasonable and the force completely excessive. As the Fifth Circuit opined in *Hanks*, "a reasonable officer on the scene would have known that suddenly resorting to physical force as [Defendant Williams] did would be clearly excessive and clearly unreasonable." *Hanks*, at 745.

64.  The *Hanks* court opined further, noting "…clearly established law demonstrated that an officer violates the Fourth Amendment if he abruptly resorts to overwhelming physical force rather than continuing verbal negotiations with an individual who poses no immediate threat or flight risk, who engages in, at most, passive resistance…" *Id.*, at 747.

65.  Mrs. Roberts suffered physical injury, pain, mental anguish, and a diminution in her ability to work as a nurse as a direct result of the excessive force used against her.

66.  Defendants Gutierrez and Perez caused Mrs. Roberts to endure pain and suffering by forcing her to the ground; subduing her forcefully against the police cruiser; and violently throwing her into the police cruiser face first.

67.  These injuries were only caused by this forceful take down and throwing into the police cruiser and not by any other means.

## COUNT TWO

## Fourth Amendment § 1983 *Monell* Claim against CITY OF CORPUS CHRISTI, TEXAS

68. Plaintiff incorporates by reference all of the foregoing and further alleges the following:

69. The conduct of Defendants Gutierrez and Perez constituted unlawful, unreasonable excessive force against Mrs. Roberts without legal cause or justification.

70. At all material times, Defendants Gutierrez and Perez acted under color of state law, as an agent of CITY OF CORPUS CHRISTI, TEXAS.

71. Defendants Gutierrez and Perez were acting within the course and scope of their duties as CITY OF CORPUS CHRISTI POLICE DEPARTMENT officers when they took Mrs. Roberts down and threw her into the police cruiser. At all times relevant to this lawsuit, Defendants Gutierrez and Perez were clad in their CITY OF CORPUS CHRISTI POLICE DEPARTMENT-issued uniforms.

72. Chief Mike Markle was and is the Defendant City's policymaker for all matters related to the CITY OF CORPUS CHRISTI POLICE DEPARTMENT, having been delegated the policymaking authority by the CITY OF CORPUS CHRISTI City Council.

73. Consequently, the CITY OF CORPUS CHRISTI had or ratified the following policies, customs, and/or practices in place when Defendants Gutierrez and Perez injured Mrs. Roberts:

74. **Policy No. 1:** On information and belief, despite having dedicated crisis intervention team (CIT) officers, CCPD does not dispatch those officers to every call involving a reported mental health issue, leaving officers without specialized training to respond to situations requiring a specialized skill set.

75. **Policy No. 2:** On information and belief, CCPD allows its officers to throw detained suspects into the back of CCPD vehicles face first, without regard for the suspect's safety.

76. Chief Markle and his command staff were all deliberately indifferent to the natural byproducts of these policies, practices, and/or customs, of which he was aware, authorized, ratified, accepted, exacerbated, and encouraged, instead of rectifying it and ensuring civilians were not hurt by it.

77. It was clear that a constitutional violation was a very likely outcome of the ratification, adoption, and promotion of these policies.

78. Chief Mike Markle and his command staff knew or should have known that not dispatching CIT officers to calls necessitating mental health professionals would culminate in situations where officers without specialized training may end up hurting a person in the throes of a mental health issue. They also knew or should have known that allowing officers to throw

detained suspects into the back of police units face first, without regard for their safety would result in injuries. Moreover, it was clear that such policies would end up with the deprivation of citizens' and suspects' rights under the Constitution and laws of this State and country, including but not limited to the Americans with Disabilities Act (ADA), which is applicable to police officers' contact with citizens and suspects.

79. These policies, *supra*, were actually known, constructively known, and/or ratified by the CITY OF CORPUS CHRISTI and its policymakers, including Chief Mike Markle, and were promulgated with deliberate indifference to Mrs. Roberts' rights under the United States Constitution and the rights of all others making contact with CITY OF CORPUS CHRISTI police officers. The policymakers of the CITY OF CORPUS CHRISTI POLICE DEPARTMENT knew that their officers would continuously be put in situations wherein constitutional violations like those aforementioned in this complaint would occur. These policies made it highly likely that such constitutional violations as those previously described would occur, under color of state law. The previously mentioned policies were the moving force of Mrs. Roberts' constitutional deprivations and injuries, causing her to experience physical and mental injury and suffer damages.

## Qualified Immunity under § 1983

80. City Employees may be entitled to qualified immunity as to their individual liability. That immunity is waived, however, upon a showing by the Plaintiff that:

a.     The individual's acts deprived the party of constitutional rights under color of law;

b.     The deprived rights were clearly established, constitutional rights in existence at the time of the acts complained of; and

c.     Such acts were not objectively reasonable under the circumstances, that is, no reasonable official could have believed at the time that the conduct was lawful.

81. "In 'an obvious case,' [*Graham v. Connor*] and [*Tennessee v. Garner*] may supply the "clearly established law." *Hanks v. Rogers*, 853 F.3d 738, 747 (5th Cir. 2017) (citing *Mullenix v. Luna*, 136 S.Ct. 305, 308, 193 L. Ed. 2d 255 (2015)) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004) (*per curiam*)); *see also Cooper*, 844 F.3d at 524. This case is an obvious case of excessive force and violation

of the Fourth Amendment right against unreasonable searches and seizures, because Mrs. Roberts was not actively engaged in the commission of a crime at the time of her violent takedown, and was completely subdued when held up against the police cruiser and thrown in face first.

82. Defendants Gutierrez and Perez, acting under color of state law, enforcing the policies, customs, and/or practices of the CITY OF CORPUS CHRISTI POLICE DEPARTMENT, deprived Mrs. Roberts of her civil liberties, without due process of law, by taking her down and throwing her into a police cruiser unreasonably and with clearly excessive force.

83. The Fifth Circuit has, in denying qualified immunity for officers, "placed weight on the quickness with which law enforcement personnel have escalated from negotiation to force." *Brothers v. Zoss*, 837 F.3d 513, 520 (5th Cir. 2016). The Court opined further to that end in the *Hanks* case, noting that "our case law clearly established that [the officer] should have continued to verbally negotiate — including by threatening force, if necessary — rather than abruptly resorting to 'actual' physical force." *Hanks*, at 748.

84. No reasonable official could have believed that taking Mrs. Roberts down and throwing her face first into the back of a police cruiser were necessary. "Any reasonable officer should have realized that [such actions] offended the Constitution." *Taylor v. Riojas*, 141 S.Ct. 52, at 54 (2020).

85. The acts of Defendants were unreasonable under the circumstances when viewed objectively.

86. Defendants were deliberately indifferent to the excessive risk of harm to Mr. Mullins in the actions they took. Such acts deprived Mrs. Roberts of and violated her clearly established constitutional rights and were not objectively reasonable.

87. The acts of Defendants clearly violated established rights under the Constitution and statutes. A reasonable person would have known that Mrs. Roberts' constitutional rights of protection against unreasonable searches and seizures were enshrined by the Fourth Amendment to the Constitution and that their actions were violative of such rights.

88. The acts of Defendants were salient in their wrongness and grossly offensive. Only an officer violating the law or who is plainly incompetent would perform such an act as violently taking down a non-menacing subject and throwing them face first into the back of a police cruiser was unnecessary under the circumstances. Thus, Defendants are liable to Plaintiff

for the damages caused by their actions, which were the direct and proximate causes, in each count alleged above respectively, of Mrs. Roberts' injuries.

## VIII.
## DAMAGES

89.  Mrs. Roberts repeats and re-alleges each and every allegation contained in the above paragraphs as though fully delineated below.

90.  Plaintiff seeks monetary relief and for judgment of all the other relief to which she deems herself entitled.

91.  Mrs. Roberts' injuries were foreseeable and directly and proximately caused by the excessive force used against her.

92.  As a direct and proximate result of the occurrence underlying this lawsuit, Mrs. Roberts suffered:

   a.  Physical injuries, including impairment;
   b.  Physical pain and suffering;
   c.  Deprivations of her liberty;
   d.  Permanent physical disfigurement;
         e.  Emotional distress, torment, and mental anguish; and
   f.  Reasonable and necessary medical care to treat her injury in the past and future.

93.  Plaintiff seeks to recover reasonable attorney's fees and costs of court, and hereby requests the award of punitive damages, pursuant to 42 U.S.C. § 1983 and § 1988.

## IX.
## ATTORNEY'S FEES

94. If Plaintiff prevails in this action, by settlement or otherwise, Plaintiff is entitled to and hereby demands attorney's fees under 42 U.S.C. §1988.

## X.
## JURY DEMAND

95. Plaintiff respectfully requests a jury trial in this matter.

# **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that judgment be rendered against all Defendants, for an amount in excess of the jurisdictional minimum of this Court. Plaintiff further prays for all other relief, both legal and equitable, to which she may show herself justly entitled.

Respectfully Submitted,

**WEBB CASON & MANNING, P.C.**
710 Mesquite Street
Corpus Christi, Texas 78401
Telephone:     (361) 887-1031
Facsimile:     (361) 887-0903


__*/s/ Matthew S. Manning* _____
MATTHEW S. MANNING
State Bar No.: 24075847
Southern Dist. ID No. 3504172
General Correspondence Email:
matt@wcctxlaw.com
**\* E-Service Email: service@wcctxlaw.com**
**\* E-Service is only accepted at the above**
**designated e-service e-mail address.**

ATTORNEY FOR MAGGIE ROBERTS